IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JACQUELINE GINWRIGHT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:12-cv-473-WC |
| | ) |
| DEPARTMENT OF REVENUE FOR | ) |
| THE STATE OF ALABAMA, *et al.*, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM OPINION AND ORDER

## I.    INTRODUCTION

On May 30, 2012, Plaintiff Jacqueline Ginwright ("Plaintiff") filed a three-count Complaint against the following defendants:  the Department of Revenue for the State of Alabama ("the Department"); Julie P. Magee, as an individual and in her Official Capacity as Commissioner of the Department ("Ms. Magee"); Charlie Lassiter, as an individual and in her official capacity as Director of Human Resources ("Ms. Lassiter"); and Annette Russell, as an individual and in her official capacity as Human Resources Coordinator ("Ms. Russell").[1]  This complaint alleged discrimination in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et. seq.*, and/or the Americans with Disabilities Act, 42 U.S.C. § 12101 *et. seq.*; retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et. seq.* and the Rehabilitation Act of 1973, 29 U.S.C.

---

[1] Ms. Magee, Ms. Lassiter, and Ms. Russell are collectively referred to herein as the Individual Defendants.

§ 701 *et. seq.*; and violations of the Family Medical Leave Act, 29 U.S.C. § 2601 *et. seq.*

Jurisdiction is proper under 28 U.S.C. § 1331 (federal question).   All parties have

consented to the conduct of all proceedings and entry of a final judgment by the

undersigned United States Magistrate Judge.   (Docs. 13 & 14).

Defendants previously filed a Motion to Dismiss.   (Doc. 6).   During the briefing

process, Plaintiff sought and was granted leave to amend the complaint.   (Doc. 10); Order

(Doc. 17).   The Amended Complaint included the following counts:

1) Disability discrimination in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et. seq.* ("Rehabilitation Act");
2) Retaliation in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et. seq.*;
3) Violations of the Family Medical Leave Act, 29 U.S.C. § 2601 *et. seq.* ("FMLA");
4) Disability discrimination in violation of 42 U.S.C. §1983 on behalf of the Department and Ms. Magee, Ms. Lassiter, and Ms. Russell in their official capacities;
5) Disability discrimination in violation of 42 U.S.C. §1983 on behalf of Ms. Magee, Ms. Lassiter, and Ms. Russell in their individual capacities;
6) Retaliation in violation of 42 U.S.C. §1983 on behalf of the Department and Ms. Magee, Ms. Lassiter, and Ms. Russell in their official capacities; and
7) Retaliation in violation of 42 U.S.C. §1983 on behalf of Ms. Magee, Ms. Lassiter, and Ms. Russell in their individual capacities.

Am. Compl. (Doc. 18) at 7-22.   After the completion of supplemental briefing on the

motion to dismiss, the court ordered that the Motion to Dismiss be granted as to (a) all

claims against the Individual Defendants in their official capacities; (b) Plaintiff's

discrimination and retaliation claims brought pursuant to the Rehabilitation Act against

the Individual Defendants in their individual capacities; (c) Plaintiff's FMLA claims

against the Individual Defendants in their individual capacities; (d) Plaintiff's FMLA

self-care claims against the Department and the Individual Defendants in their official capacities; and (e) Plaintiff's § 1983 claims against the Department and the Individual Defendants in their official capacities.  Order (Doc. 23) at 22.  Thus, Plaintiff's only surviving claims became Plaintiff's Rehabilitation Act claims against the Department; Plaintiff's FMLA claims under the family-care provision against the Department; and Plaintiff's 42 U.S.C. § 1983 claims against the Individual Defendants in their individual capacities.  *Id.*  Defendants previously moved for summary judgment (Doc. 29) on all counts and the court denied the motion with leave to refile pending the conclusion of discovery (Doc. 34).

Before the court is Defendants' renewed Motion for Summary Judgment (Doc. 35) and Memorandum of Law in Support (Doc. 35-1).  Plaintiff filed an Objection to Defendants' Brief and Opposition to Defendants' Motion for Summary Judgment (Doc. 40) as well as a response in opposition to the motion for summary judgment (Doc. 41).  Defendant filed a reply (Doc. 42).

Upon consideration of the Motion for Summary Judgment (Doc. 35), the pleadings of the parties, and the evidentiary materials filed in support thereof, and for the reasons that follow, the court finds that the Motion is due to be granted.

## II.    STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court shall grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law."  Fed. R. Civ. P. 56(a).[2]  Only disputes about material facts will preclude the granting of summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party.  An issue is 'material' if it might affect the outcome of the case under the governing law."  *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion[,]" and alerting the court to portions of the record which support the motion.  *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986).  However, once the movant has satisfied this burden, the nonmovant is then similarly required to cite to portions of the record which show the existence of a material factual dispute.  *Id.* at 324.  In doing so, and to avoid summary judgment, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions,

---

[2] On December 1, 2010, amendments to Rule 56 became effective.  The amendments to Rule 56 generally reorganize the provisions of the Rule and incorporate language which is "intended to improve the procedures for presenting and deciding summary judgment-motions and [is] . . . *not intended to change the summary-judgment standard or burdens.*" *Farmers Ins. Exchange v. RNK, Inc.*, 632 F.3d 777, 782 n.4 (1st Cir. 2011) (internal quotations omitted) (emphasis in original).  Moreover, because the summary judgment standard remains the same, the amendments "will not affect continuing development of the decisional law construing and applying" the standard now articulated in Rule 56(a).  Fed. R. Civ. P. 56(a) advisory committee's note to 2010 amendments.  Accordingly, while the court is bound to apply the new

interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

If the nonmovant "fails to properly address another party's assertion of fact" as required by Rule 56(c), then the court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials - including the facts considered undisputed - show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2) & (3).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the nonmovant. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). Likewise, the reviewing court must draw all justifiable inferences from the evidence in the nonmoving party's favor. *Anderson*, 477 U.S. at 255. After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

## III.   STATEMENT OF FACTS

The court has carefully considered the pleadings in this case and all documents submitted in support of, and in opposition to, the Motion for Summary Judgment. The

---

version of Rule 56, the undersigned will, where appropriate, continue to cite to decisional law construing and applying prior versions of the Rule.

submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following relevant facts:

At all times relevant to this action, Plaintiff was an employee of the Department, working as an Account Clerk assigned to the Collection Services Division, which is located in the Gordon Persons Building.

Ms. Lassiter was the Department's Director of Human Resources from 1986 until she retired in December of 2011. Her duties included oversight of all personnel and pay matters and handling the Department's employees' requests for accommodations. Ms. Russell was a Training Specialist II in the Human Resources department; she worked directly for Ms. Lassiter. Ms. Russell's duties included administration of the FMLA program for the Department. Ms. Magee was the Commissioner of the Department, and in that capacity, she was responsible for managing the Department's employees.

Plaintiff has been disabled as a result of a fall in the Montgomery Mall in 1999 and an automobile accident in 2006, which resulted in permanent disabling conditions in her back and legs. These conditions make it very difficult for Plaintiff to walk long distances and cause her pain. Plaintiff made the Department, Ms. Magee, Ms. Lassiter and Ms. Russell aware of her back and leg conditions by providing documentation of her conditions after her 1999 fall and her 2006 automobile accident.

Plaintiff's adult daughter has Downs Syndrome, which is a permanent medical/health condition. Her daughter also has a seizure disorder (epilepsy) which is considered a chronic condition.

Since the mid 1990's, Plaintiff had requested and been approved for leave under both the self-care and family-care provisions of FMLA.  As an eligible employee, Plaintiff had a total entitlement of twelve workweeks (480 hours) of FMLA leave during any twelve-month period.  As the Employer, the Department uses a "rolling" method to determine the twelve-month period in which the twelve weeks of leave entitlement occurs.  An employee could use the entitlement for either self-care or family-care purposes.  Plaintiff asserts that "[t]he Department's Human Resources officers, Ms. Lassiter and Ms. Russell, repeatedly and intentionally denied [Plaintiff]'s requests for FMLA leave," sometimes requiring Plaintiff to obtain additional documentation from doctors before eventually approving the requests.  Pl.'s Resp. Br. (Doc. 41) at 6-7.

On October 26, 2010, Plaintiff emailed Acting Revenue Commissioner, Cynthia Underwood ("Ms. Underwood"), to complain about Ms. Lassiter's denial of FMLA coverage and what Plaintiff felt was harassment in response to Plaintiff's attempts to get leave to seek treatment for herself and her daughter.  On that same day, Plaintiff's supervisor, Martha Pegues[3] ("Ms. Pegues"), issued Plaintiff a letter of warning regarding Plaintiff's excessive non-FMLA unapproved leave-without-pay usage.  Ms. Pegues was unaware Plaintiff had sent the complaint to Ms. Underwood.  Plaintiff was later issued letters of reprimand for a continuation of excessive usage of unapproved leave without pay despite the previous warning.

---

[3] Ms. Pegues is not named as a defendant in this case.

In March 2010, March 2011, and April 2011, Plaintiff, on her own and through attorneys, made several requests for accommodations under the American's With Disabilities Act and/or the Rehabilitation Act. One request was to get a dedicated handicapped parking space in the Gordon Persons Building parking lot. The Department denied this request, stating that "there were no permanent handicapped spaces available at the time of [Plaintiff's] requests." Defs.' Br. (Doc. 35-1) at 14. The Department suggested instead that Plaintiff park her vehicle in the Crampton Bowl parking area and take a shuttle bus to her building. Plaintiff declined this alternative. Plaintiff then elected to pay $45.00 per month to park in a lot closer to her building. When Plaintiff requested permission to enter the building through the loading dock entrance at the side of the building nearer to the lot where Plaintiff paid to park, the Department denied the request and told Plaintiff she could not enter through that door due to safety considerations and a policy issued by the building's management prohibiting use of the loading dock door. Plaintiff also requested additional time to arrive at her work space without being docked leave time. The Department's policy was that any employee who clocked in more than two minutes late would be docked thirty minutes of leave. The Department denied Plaintiff's request to except her from this policy, but the Department did offer Plaintiff the option of beginning her work day thirty minutes later in exchange for taking a thirty minute lunch break, instead of the full hour. Plaintiff declined this alternative.

On March 23, 2011, Plaintiff's daughter had a serious seizure. Plaintiff called her supervisor, Ms. Pegues, to inform her of the seizure and that she was in the hospital with her daughter. Ms. Pegues contacted Human Resources about Plaintiff's need for FMLA

leave, but the FMLA leave was denied and classified as unapproved leave without pay, pending the receipt of documentation of Plaintiff's daughter's condition.  After Plaintiff provided the documentation, the leave was retroactively approved as FMLA leave and reclassified accordingly.

Due to her worsening physical condition, Plaintiff applied for disability retirement in June 9, 2011, and the Department approved that retirement effective August 3, 2011.

Plaintiff filed her Complaint of disability discrimination with the EEOC on July 1, 2011, and then amended her Complaint with claims of FMLA violations and Retaliation on August 30, 2011.  The EEOC issued a right to sue letter on February 29, 2012, and Plaintiff timely filed this action on May 30, 2012.

## IV.   DISCUSSION

Following the previous partial dismissal, Plaintiff has three remaining claims:  (1) that the Department violated the Rehabilitation Act through disability discrimination and retaliation; (2) that the Department violated FMLA through interference and retaliation; and (3) that the Individual Defendants violated 42 U.S.C. § 1983 by denying Plaintiff equal protection as guaranteed by the Fourteenth Amendment.  Defendants move for summary judgment as to all remaining claims.  The court addresses each claim separately below.

### A.   *Rehabilitation Act Claims against the Department of Revenue*

Plaintiff alleges that the Department violated the Rehabilitation Act, first, by discriminating against Plaintiff on the basis of her disability and, second, by retaliating against her.  The Rehabilitation Act "'prohibits federal agencies from discriminating in

employment against otherwise qualified individuals with a disability.'" *Dickerson v. Sec'y, Dep't of Veterans Affairs Agency*, 489 F. App'x 358, 359-60 (11th Cir. 2012) (quoting *Sutton v. Lader*, 185 F.3d 1203, 1207 (11th Cir. 1999)).  The Department moves for summary judgment as to both claims brought pursuant to the Rehabilitation Act.

### 1.    Disability Discrimination in violation of the Rehabilitation Act

Plaintiff first argues that the Department violated the Rehabilitation Act by discriminating against Plaintiff because she is disabled.  The Rehabilitation Act prohibits discrimination against an otherwise qualified person under any program or activity receiving federal financial assistance solely based on a disability.  29 U.S.C. § 794.

As a preliminary matter, the Department argues that Plaintiff has not sufficiently shown that the Department is a program or activity receiving federal financial assistance. Specifically, the Department argues that, while "the Department has received federal financial assistance for specific projects in the past," "there is no evidence in the record to show that [Plaintiff] had been excluded from participation in, been denied the benefits of, or been subjected to discrimination by the Department under any program or activity receiving federal financial assistance."  Defs.' Br. (Doc. 35-1) at 20.   The Department asserts that "the only division which has received any federal funds in the past, even though the amount was minimal, was the Motor Vehicle Division[, and] [Plaintiff] never worked for the Motor Vehicle Division."  *Id.* at 20.   The court does not find this argument to be compelling.  Defendants' Answer to the amended complaint states, "[t]he Department denies that it receives federal funding, however, the State of Alabama receives federal funding, thereby subjecting the Department, as one of its agencies, to the

provisions of the Rehabilitation Act."   Answer to Am. Compl. (Doc. 26) at 8.   The Department cannot now assert that it is excused from the antidiscrimination provisions of the Act after admitting that it is subject to the same.   *See Scott-Bolton v. Ala. Bd. of Pardons and Paroles*, No. 7:12-cv-800-LSC, 2013 WL 1282344, at *5 (N.D. Ala. Mar. 25, 2013) (defendant cannot avoid liability under the Rehabilitation Act at summary judgment on the grounds of defendant not receiving federal funds when the defendant previously admitted to such in its answer), *aff'd*, 551 F. App'x 537 (11th Cir. 2014). Because the Department so admitted in the Answer, the court finds that the Department is subject to the Rehabilitation Act.

The Department argues it is entitled to summary judgment because Plaintiff "has not alleged any specific facts to support her allegation" that she has been discriminated against in violation of the Rehabilitation Act.   Defs.' Br. (Doc. 35-1) at 11.   "'To establish a *prima facie* case of discrimination under the [Rehabilitation] Act, an individual must show that (1) [s]he has a disability; (2) [s]he is otherwise qualified for the position; and (3) [s]he was subjected to unlawful discrimination as the result of h[er] disability.'" *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (quoting *Sutton v. Lader*, 185 F.3d 1203, 1207-08 (11th Cir. 1999)).

> Under the Rehabilitation Act, a plaintiff can prove disability discrimination through either direct evidence of discrimination, or through circumstantial evidence. If the plaintiff relies on circumstantial evidence, the *McDonnell Douglas*[*Corp. v. Green*, 411 U.S. 792 (1973)] burden-shifting framework applies. Accordingly, the plaintiff must establish a *prima facie* case for discrimination, the defendant must offer a legitimate, non-discriminatory justification for the employment decision, and the plaintiff must ultimately prove that the defendant's justification is a pretext for discrimination.

*Curry v. Sec'y, Dep't of Veterans Affairs*, 518 F. App'x 957, 963-64 (11th Cir. 2013).

The parties agree that Plaintiff satisfied the first two elements, as Plaintiff has a disability and is otherwise qualified for the position.  A dispute arises as to the third element, which requires Plaintiff to show she was subjected to unlawful discrimination on the basis of a disability.  Indeed, "[i]t is not enough for a plaintiff to demonstrate that an . . . action was based partly on h[er] disability.  Rather, under the Rehabilitation Act, a plaintiff must prove that [s]he suffered [discrimination] '*solely by reason of* h[er] handicap*.*" *Ellis*, 432 F.3d at 1326 (quoting 29 U.S.C. § 794(a)) (emphasis added).

Plaintiff contends that the Department discriminated against her solely on the basis of her disability by failing to provide Plaintiff's requested reasonable accommodations as required by the Americans with Disabilities Act ("ADA").  Plaintiff requested from the Department the following accommodations:  (1) a dedicated handicapped parking space in the parking deck of the building in which Plaintiff works; (2) ingress and egress of the building through a handicap-accessible loading dock door that was on the same side of the building as the parking lot in which Plaintiff paid to park; and (3) additional time to arrive at work without being docked for the missed time.  The Department declined to provide any of these accommodations, and Plaintiff asserts that the Department's denial was an act of discrimination due to Plaintiff's disability.

The Department argues that Plaintiff cannot show that these accommodations were denied as an act of discrimination and especially cannot show that these requests were denied solely because of Plaintiff's handicap, as the Rehabilitation act would require.

Indeed, the Department has provided nondiscriminatory reasons why each accommodation was denied.   First, the Department explained that it could not grant Plaintiff a dedicated handicapped parking space in the building lot because, simply, "there were no permanent handicapped spaces available at the time of her requests." Defs.' Br. (Doc. 35-1) at 14.   "The Department has over nine hundred employees located in the Gordon Persons Building and only eighty-seven (87) assigned parking spaces in and around the building, and at any given time there is a waiting list for the handicapped parking." *Id.*   Second, the Department explained that Plaintiff was not able to enter through the loading dock door based on a directive issued by the Alabama Finance Department, the department managing the Gordon Persons Building, that prohibits employees from using the loading dock door for safety reasons.   "The Department is a tenant in the . . . Building and as a tenant it cannot unilaterally disregard a directive from management of the building."   *Id.* at 17.   The court finds that Plaintiff has failed to establish a *prima facie* case as to these two requested accommodations, as Plaintiff cannot show she was denied the accommodations solely by reason of her handicap.

As to the third requested accommodation, the Department explained that Plaintiff could not arrive late to work without taking leave while still receiving a full hour lunch break and leaving work at the regular time because "[e]very employee is required to work a full eight-hour day; there are no part-time positions in [Plaintiff's] Division."   Defs.' Reply Br. (Doc. 42) at 8.   Plaintiff did not seek a reasonable flexible work schedule. What Plaintiff sought was to be paid for a full work day despite arriving late and not making up any missed time.   The court finds that Plaintiff's request was not for a

reasonable accommodation.  "An employer must provide reasonable accommodations for employees with known disabilities unless such accommodations would result in undue hardship to the employer." *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000). "An employer is not required to accommodate an employee in any manner in which the employee desires." *Stewert v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997).  An employee is "not entitled to the accommodation of her choice, but only to a reasonable accommodation." *Id.*  Moreover, Plaintiff is unable to show that the denial is an act of discrimination based on Plaintiff's disability.  Thus, the court finds that Plaintiff has failed to show a *prima facie* case as to the third requested accommodation.

Additionally, the undisputed evidence shows that the Department offered Plaintiff the following alternative accommodations:  (1) Plaintiff could park in the Cramton Bowl parking lot and take a shuttle bus to the building in which Plaintiff worked; or (2) Plaintiff could begin her work day at 8:30 a.m. (rather than 8:00 a.m.), but Plaintiff's lunch break would be shortened by thirty minutes if Plaintiff still wanted her workday to end at 5:00 p.m.  Plaintiff rejected these alternatives.  Plaintiff argues that the shuttle option would have dropped Plaintiff off on the far side of the building, requiring Plaintiff to walk farther to her desk.  However, the Department asserts that "[t]he distance Plaintiff had to walk from the lot where she parked to the loading dock entrance is approximately the same distance Plaintiff would have had to walk from the entrance where the shuttle stops to the side of the building where her office was located."  Defs.' Br. (Doc. 35-1) at

14

16.  Plaintiff does not dispute this fact in her response.  Therefore, the court finds that these alternative accommodations would have been reasonable.[4]

Accordingly, the court finds that Plaintiff failed to show that she suffered an adverse employment action caused solely by her disability.  Thus, Plaintiff has failed to establish a *prima facie* case of disability discrimination, and the Department is entitled to summary judgment.

### 2.      Retaliation Claim in violation of the Rehabilitation Act

Second, Plaintiff alleges that the Department retaliated against her in violation of the Rehabilitation Act after Plaintiff complained to her employer about the denial of her FMLA leave requests.

> The Rehabilitation Act incorporates the anti-retaliation provision from § 12203(a) of the Americans with Disabilities Act ("ADA"), 29 U.S.C. §§ 791(g), 793(d), 794(d); *see Sutton v. Lader*, 185 F.3d 1203, 1207 n. 5 (11th Cir. 1999) (stating that the standard for determining liability under the Rehabilitation Act is the same as under ADA, in the context of a discrimination claim). Under the ADA's anti-retaliation provision, "[n]o person shall discriminate against an individual because such individual has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a). This anti-retaliation provision is similar to Title VII's prohibition on retaliation. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997). Accordingly, we assess retaliation claims pursuant to the Rehabilitation Act under the framework we use in assessing Title VII retaliation claims. *See Ellis v. England*, 432 F.3d 1321, 1323-24 (11th Cir. 2005) (discussing the procedures for a federal employee to raise disability claims under the Rehabilitation Act).

---

[4] The Department points out that "if [a disabled] individual rejects a reasonable accommodation, aid, service, opportunity or benefit that is necessary to enable the individual to perform the essential functions of the position held or desired, and cannot, as a result of that rejection, perform the essential functions of the position, the individual will not be considered qualified." 29 C.F.R. § 1630.9(d).  The Department makes a compelling argument that Plaintiff's denial of the shuttle accommodation option and the schedule adjustment accommodation option prevent Plaintiff from now bringing this action based on the failure to accommodate.

*Burgos-Stefanelli v. Sec'y, U.S. Dep't of Homeland Sec.*, 410 F. App'x 243, 245 (11th Cir. 2011).

Retaliation claims require a *prima facie* showing of discriminatory intent, *E.E.O.C. v. Joe's Stone Crab*, 220 F.3d 1263, 1286 (11th Cir. 2000), which "can be established three ways: 1) direct evidence; 2) circumstantial evidence; or 3) statistical proof." *Davis v. City of Panama City, Fla.*, 510 F. Supp. 2d 671, 681 (N.D. Fla. 2007) (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)). Plaintiff has not provided direct evidence that retaliation was the reason for any alleged adverse employment action nor has she proffered statistical evidence or evidence of a pattern of discrimination in this case. Because Plaintiff's retaliation claim relies on circumstantial evidence, the claim is analysed under the burden-shifting framework described in *McDonnell Douglas*, 411 U.S. at 802-03.

### a.    Establishing a *Prima Facie* Case

Under the *McDonnell Douglas* framework, Plaintiff must first create a presumption of retaliation by establishing a *prima facie* case, *Id.*, "which creates a rebuttable presumption that the employer acted illegally." *McCalister v. Hillsborough Cnty. Sheriff*, 211 F. App'x 883, 884-85 (11th Cir. 2006). "To establish a *prima facie* case of retaliation, a plaintiff may show that [s]he engaged in protected activity, [s]he suffered a materially adverse action, and a causal connection existed between the activity and the adverse action." *Underwood v. Dep't of Fin. Servs. State of Fla.*, 518 F. App'x 637, 641 (11th Cir. 2013) (unpublished) (citing *Dixon v. Hallmark Co.*, 627 F.3d 849, 856 (11th Cir. 2010)).

16

The Department does not dispute that Plaintiff engaged in protected activity when Plaintiff complained to Ms. Underwood via e-mail on October 26, 2010, regarding the denial of Plaintiff's FMLA leave requests for herself and her daughter. The court finds that Plaintiff has, therefore, met the protected activity element of the *prima facie* case.

The Department does dispute that Plaintiff was subjected to an adverse action and that there was any causal connection between any protected activity and the adverse action.  An adverse employment action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  Plaintiff claims that the Department "took adverse actions against [Plaintiff] in the form of Letters of Warning and a Letter of Reprimand," which were written by Plaintiff's supervisor, Ms. Pegues.[5]  Pl.'s Resp. Br. (Doc. 41) at 33.  The Department disputes that the receipt of these letters qualify as any adverse action. However, the court finds it unnecessary to determine whether the letters of warning and reprimand constituted an adverse action because Plaintiff is clearly unable to establish the third element, a causal connection between the protected email and the warning or reprimand.

"'To establish a causal connection, a plaintiff must show that the decision-makers

---

[5] To the extent Plaintiff attempts to allege numerous additional adverse actions in her Response to the Motion for Summary Judgment, the court would note that the only adverse actions alleged in the Amended Complaint is the reprimand Plaintiff received for excessive use of unapproved leave without pay. Judicial claims must be presented in the Complaint; a plaintiff may not wait until the response to summary judgment to raise new claims.  *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314-15 (11th Cir. 2004).

were aware of the protected conduct and that the protected activity and the adverse action were not wholly unrelated.'" *Burgos v. Chertoff*, 274 F. App'x 839, 843 (11th Cir. 2008) (quoting *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000) (quotations and alterations omitted)).   Causal connection at the *prima facie* level can be established through a close temporal proximity between the protected expression and the adverse action where there is evidence that the decision maker was aware of the protected conduct. *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004).   "That requirement rests upon common sense[; a] decision maker cannot have been motivated to retaliate by something unknown to him." *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000).

Here, Plaintiff argues that "[i]t is obvious that [the Department] gave her Letters of Warning and Reprimand shortly after [Plaintiff] made . . . protected disclosures."  Pl.'s Resp. Br. (Doc. 41) at 34-35.  However, Plaintiff is unable to show a causal connection because Plaintiff provides zero evidence that Ms. Pegues had any knowledge of the protected disclosure.   In fact, the only evidence in the record in this regard is Ms. Pegues's testimony that she was not aware of the email Plaintiff sent complaining about the denial of Plaintiff's FMLA requests.

Plaintiff argues that "even if [Ms. Pegues] did not receive the e-mail [in which Plaintiff complained to Ms. Underwood], it is highly likely she received guidance about it from Ms. Catledge," Ms. Pegues's immediate supervisor who had been copied on Plaintiff's email to Ms. Underwood.   *Id.* at 32.  The court finds this assertion to be without merit.  Plaintiff does not provide any evidentiary support for this speculative

allegation.  To avoid summary judgment, Plaintiff must do more than show doubt as to the material facts.  *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  Plaintiff must support her assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A) & (B).

The court finds that Plaintiff has not and cannot show that there was a causal connection where there is no evidence Ms. Pegues was aware of the protected conduct.  *Higdon*, 393 F.3d at 1220.  Thus, the court finds that Plaintiff has failed to establish a *prima facie* case of circumstantial evidence of retaliation, and the Department is entitled to summary judgment.

### b.    Providing a Legitimate, Nondiscriminatory Reason for the Reprimand

Additionally, even if the court assumed that Plaintiff could establish a *prima facie* case of retaliation, *which it does not*, the Department would still be entitled to summary judgment.  Under *McDonnell Douglas*, if Plaintiff establishes a *prima facie* case, the burden then shifts to the employer to provide "legitimate, nondiscriminatory reasons for the challenged employment action."  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997).  When this burden shifts, the Department's burden is "exceedingly light," and the Department must merely proffer a non-discriminatory reason for the adverse employment action, not prove it.  *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994) (quoting *Perryman v. Johnson Prods. Co., Inc.*, 698 F.2d 1138,

1142 (11th Cir. 1983)).

Here, the Department provided legitimate, nondiscriminatory reasons for the challenged employment action.  The Department explained,

> Ms. Ginwright received a *Letter of Warning* on October 26, 2010, from her supervisor, Martha Pegues, for being late to work on five separate occasions requiring her to take leave between October 1, 2010 and October 14, 2010, for a total of five (5) hours.  Ms. Ginwright had no accrued leave, sick or annual to cover the leave used for being late to work on (October 7, 2010, October 8, 2010, October 12, 2010, October 13, 2010, and October 14, 2010).  In addition, Ms. Ginwright had called in sick for eight (8) hours LWOP leave on October 4, 2010.  None of these thirteen (13) hours were covered by *FMLA* (as Ms. Ginwright did not claim them as being used for *FMLA* purposes).  Also during this same time period, Ms. Ginwright took eight (8) hours of sick leave on October 5, 2010 and two and one half (2.5) hours of sick leave on October 8, 2010, that were covered by *FMLA* and therefore were considered approved LWOP.

Defs.' Br. (Doc. 35-1) at 25 (citations omitted).  "The Letter of Reprimand was issued for violating the Department's [leave without pay] policy on December 6th, 7th, and 8th, after being warned on October 26, 2010."  *Id.*  An employee's violation of an employer's leave without pay policy is a legitimate, nondiscriminatory reason for issuing a letter of warning followed by a letter of reprimand if the problem continued.  The court finds that the Department has met its burden to set forth sufficient legitimate, nondiscriminatory reasons for the letters of warning and reprimand requested by Plaintiff.

### c.   Proving the Reason to be a Pretext for Unlawful Discrimination

Once the Department has proffered a nondiscriminatory reason for the actions taken against Plaintiff, Plaintiff "then has the ultimate burden of proving the reason to be a pretext for unlawful discrimination."  *Denney v. City of Albany*, 247 F.3d 1172, 1183

(11th Cir. 2001).  In order to prove that a defendant's articulated reason is pretext, a plaintiff must demonstrate not only that the reason is false, but also that intentional discrimination was the real reason.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) ("[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." (emphasis in original)).  To survive a motion for summary judgment, a plaintiff must rebut every legitimate, nondiscriminatory reason for the adverse employment action. *Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1308 (11th Cir. 2007).

Plaintiff's only attempt to establish pretext for her retaliation claim is by arguing that the Department's "reasons[] regarding the lack of knowledge [on the part of Ms. Pegues] of [Plaintiff]'s protected disclosures are not worthy of belief," and "[a] plaintiff may satisfy this burden of showing pretext by persuading the court . . . indirectly that the proffered reason for the employment decision is not worthy of belief."  Pl.'s Resp. Br. (Doc. 41) at 34 (citations omitted).  As explained more thoroughly above, the record does not reflect any evidence that Ms. Pegues was aware of Plaintiff's protected disclosures at the time the warning letter was written.  Plaintiff's statement that "even if [Ms. Pegues] did not receive the e-mail [in which Plaintiff complained to Ms. Underwood], it is highly likely she received guidance about it from Ms. Catledge," *Id.* at 32, is without any evidentiary support.  This is not sufficient to show pretext or to avoid summary judgment.

Plaintiff has failed to rebuff with any evidence the legitimate reason as set forth by the Department for the actions taken against Plaintiff.  Because Plaintiff has not met her

burden, even if this court was to assume a *prima facie* case of retaliation, the Department is still entitled to summary judgment.

### B.     FMLA Claims against the Department of Revenue

Next, Plaintiff alleges that the Department violated FMLA, first, by interfering with Plaintiff's rights under FMLA and, second, by retaliating against Plaintiff.  "[T]he FMLA creates two types of claims:  interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, *see* 29 U.S.C. § 2615(a)(1), and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act, *see* 29 U.S.C. § 2615(a)(1) & (2); 29 C.F.R. § 825.220(c).'"  *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001).   The Department moves for summary judgment on both claims.

### 1.     Interference in violation of the Rehabilitation Act

In the Amended Complaint, Plaintiff claims that the frequency in which the Department required Plaintiff to provide documentation and seek certification for herself and her daughter, as well as the Department's denials of Plaintiff's requested FMLA leave to care for herself and her daughter, "amounted to an interference with [Plaintiff]'s right to protection under the FMLA."  Am. Compl. (Doc. 18) at 12-14.  Previously, at the motion to dismiss stage, the court dismissed any claims Plaintiff brought pursuant to the self-care provision of FMLA.  To the extent Plaintiff asserts interference with her FMLA rights based on allegations that the Department too frequently required Plaintiff to provide documentation or seek certification of her own FMLA conditions, those claims

have been dismissed and will not be considered by the court.  The only remaining FMLA claims before the court are in regards to the family-care provision of FMLA relating to the frequency in which the Department required Plaintiff to provide documentation and seek certification for Plaintiff's daughter, as well as the Department's denials of Plaintiff's requested FMLA leave to care for her daughter.

"[A] plaintiff suffers no FMLA injury when she receives all the leave she requests."  *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1275 (11th Cir. 1999).

> The FMLA provides no relief unless the employee has been prejudiced by the violation; "the remedy is tailored to the harm suffered." *Ragsdale v. Wolverine World Wide, Inc.*, [535 U.S. 81, 89 (2002)]; *see also Demers v. Adams Homes of Northwest Fla., Inc.*, 321 F. App'x 847, 849 (11th Cir. 2009). . . . *See also Demers*, 321 F. App'x at 849 (a plaintiff "may not recover for 'technical infractions under the FMLA . . . in the absence of damages'" (citation omitted)); *Graham v. State Farm Mut. Ins. Co. .*, 193 F.3d 1274, 1275 (11th Cir. 1999) ("a plaintiff suffers no FMLA injury when she receives all the leave she requests, and indeed is paid for most of it")[.]

*Andrews v. CSX Transp., Inc.*, 3:06-CV-704-J-32HTS, 2009 WL 5176462, at *2 (M.D. Fla. Dec. 22, 2009).

Even if the Department interfered with Plaintiff's right to FMLA leave by requiring additional documentation of Plaintiff's daughter's condition in March 2011, Plaintiff presents no evidence of either adverse employment action or a cognizable injury from that interference.  Plaintiff admits she received the leave she requested in March 2011, and that the leave was retroactively classified as FMLA leave without pay. Plaintiff makes no claims that the Department should have paid Plaintiff for that leave time, as Plaintiff had previously used all earned paid sick leave.  Plaintiff's receipt of all

requested sick leave and all compensation owed defeats her interference claim because a plaintiff suffers no FMLA injury when she receives all requested leave and proper compensation for any leave that should be paid. *Graham*, 193 F.3d at 1275; *see also Drago*, 453 F.3d at 1307.

### 2.    Retaliation in violation of the Rehabilitation Act

Plaintiff claims that the Department retaliated against Plaintiff for requesting FMLA leave. "When a plaintiff asserts a claim of retaliation under the FMLA, in the absence of direct evidence of the employer's intent, we apply the same burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, [411 U.S. 792 (1973)], for evaluating Title VII discrimination claims." *Strickland*, 239 F.3d at 1207 (citing *Brungart*, 231 F.3d at 798). A plaintiff must first establish a *prima facie* case by showing that "'(1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment decision; and (3) the decision was ca[us]ally related to a protected activity.'" *Pereda v. Brookdale Senior Living Cmty., Inc.*, 666 F.3d 1269, 1275 (11th Cir. 2012) (quoting *Walker v. Elmore Cnty. Bd. of Educ.*, 379 F.3d 1249, 1252 (11th Cir. 2004)).

As discussed above, all parties agree that Plaintiff's email to Ms. Underwood dated October 26, 2010 is considered protected activity and the court again finds it unnecessary to determine whether the letters of warning or reprimand were adverse employment actions because Plaintiff still has not shown a causal connection. Although Plaintiff brought separate claims for retaliation under the Rehabilitation Act and retaliation under FMLA in the Amended Complaint, Plaintiff lumps her retaliation claims

24

together in her response to the motion for summary judgment.  Therefore, Plaintiff does

not add any additional argument to the FMLA retaliation claim aside from the arguments

already addressed in relation to the Rehabilitation Act retaliation claim.  For the same

reasons discussed in Section IV.A.2. above, Plaintiff is unable to establish a *prima facie*

case of retaliation.  The Department is entitled to summary judgment on this claim.

### C.        42 U.S.C. § 1983 Claims against the Individual Defendants

Lastly, Plaintiff alleges that the Individual Defendants violated 42 U.S.C. § 1983

("§ 1983" or "section 1983") by discriminating against Plaintiff based on her disability

and by retaliating against Plaintiff.  Section 1983 provides that

> [e]very person who, under color of a statute ordinance, regulation, custom,
> or usage, of any State . . . , subjects, or causes to be subjected, any citizen
> of the United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at
> law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  Section 1983 "is not itself a source of substantive rights," rather it

provides "a method for vindicating federal rights elsewhere conferred."  *Baker v.*

*McCollan*, 443 U.S. 137, 144 (1979).  In order to establish a claim under § 1983, "a

plaintiff must prove (1) a violation of a constitutional right, and (2) that the alleged

violation was committed by a person acting under color of state law."  *Holmes v. Crosby*,

418 F.3d 1256, 1258 (11th Cir. 2005) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

As the Individual Defendants point out, Plaintiff "must prove that the decision

made by the Individual Defendants regarding her requested accommodations and FMLA

leave violated the Equal Protection Clause of the Fourteenth Amendment of the United

States Constitution to subject them to her § 1983 claims." Defs.' Br. (Doc. 35-1) at 44. Plaintiff's section 1983 claims are based entirely on her discrimination and retaliation claims. As the court has found those claims to be without merit, Plaintiff's section 1983 claims must also fail. Thus, the Individual Defendants are entitle to Summary Judgment.

## V.    CONCLUSION

For the reasons stated in this opinion, it is

ORDERED that the Motion for Summary Judgment (Doc. 35) is GRANTED and this case is DISMISSED.

A separate judgment will issue.

Done this 5th day of June, 2014.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE